UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| ASHLEE E. PADGETT, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:23-cv-00071-MPB-CSW |
| | ) | |
| JACOB CARL BUTLER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS**

Plaintiffs are the parents of children, between the ages five and eight, who were victims of Defendant Jacob Carl Butler, a convicted sex offender. At the time of the crimes, Butler was a student at the University of Evansville ("UE") providing tutoring services at Vogel Elementary School pursuant to an agreement between UE and the Evansville-Vanderburgh School Corporation ("EVSC"). In addition to Butler, the parents sue UE and its Board of Trustees (together, "the UE Defendants") and EVSC and its Board of Trustees ("the EVSC Defendants") for alleged failures leading to the exploitation of Plaintiffs' children.

Now before the Court are two motions to dismiss Plaintiffs' Complaint. The UE Defendants move to dismiss some—but not all—of Plaintiffs' claims. Specifically, the UE Defendants challenge the legal sufficiency of Plaintiffs' claims that Defendants are vicariously liable for Butler's crimes under the common-carrier doctrine, the *respondeat superior* doctrine, and principles of agency law. The UE Defendants do not move to dismiss Plaintiffs' claims based on theories of direct liability, such as the claim that UE was itself negligent. The EVSC Defendants, on the other hand, move to dismiss all of Plaintiffs' claims.

1

The Court **GRANTS in part and DENIES in part** the UE Defendants' partial motion to dismiss and **GRANTS in part and DENIES in part** the EVSC Defendants' motion to dismiss. The common-carrier doctrine claims against both UE and EVSC fail as a matter of law, but all other claims survive.

## I.    Factual Background

At this early stage in the case, the Court must assume all well-pleaded factual allegations in Plaintiffs' Complaint are true when determining whether Plaintiffs have sufficiently stated their legal claims. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022). In addition, the Court may consider exhibits Plaintiffs attached to their Complaint, *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 528 n.8 (7th Cir. 2015), but where an exhibit incontrovertibly contradicts the Complaint's allegations, the exhibit ordinarily controls—even when considering a motion to dismiss, *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Finally, the Court may consider facts added by statements in or exhibits attached to Plaintiffs' brief in response to Defendants' motions to dismiss so long as those facts are consistent with the allegations in the Complaint. *Help At Home Inc. v. Med. Cap., L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001). Accordingly, the Court accepts the following facts from Plaintiffs' Complaint, exhibits, and brief as true for purposes of this order.

### A.    The Clinical Education Agreement

In 2021, Jacob Butler was a student at UE. (Docket No. 1-1, Compl. at ECF p. 6). UE students pursuing a career in education, like Butler, could become "Students" engaged in a "pre-

student teaching experience" at EVSC schools under a "Clinical Education Agreement" executed by UE and EVSC. (*Id.*; Docket No. 1-1, Ex. A ("Agreement") at ECF p. 106).[1]

Under the Agreement, UE and EVSC had the joint responsibility to assign students and plan the field experience. (Docket No. 1-1 at ECF p. 107). UE and EVSC agreed to meet as necessary to "plan, evaluate, and/or modify the field experience program," and both parties retained a duty to inform the other of "changes in supervision, coordination and/or expectations" regarding the program. (*Id.*).

UE had the responsibility to review student teacher applications and formally recommend student teachers to EVSC. (*Id.* at ECF p. 106–07). UE students were also required to provide EVSC with proof of clean criminal background checks and Child Protection Index Checks. (*Id.* at ECF p. 107). The Agreement permitted a "University Supervisor or other designated representative" of UE to have "access, at all reasonable times, to visit the classroom(s) to which students and student teachers have been assigned for the purposes of observation and supervision." (*Id.* at ECF p. 108). UE also retained the right to discharge a student from the program if it determined, "in its sole discretion, that removal of that student is in [UE's] best interests[.]" (*Id.* at ECF p. 109).

EVSC had the responsibility to "[p]rovide Mentor Teacher(s), support staff and facilities for student supervision" and "[e]nsure that Mentor Teachers provide appropriate supervision to student teachers and students in pre-student teaching experiences." (*Id.* at ECF p. 107). Students were subject to EVSC rules and regulations and placed "under the direction and control of the

---

[1] UE now claims the Clinical Education Agreement was not the operative agreement and moves to amend its motion to dismiss. (Docket No. 98). However, UE's briefing states the parties are "still conducting discovery on the Clinical Education Agreement." (Docket No. 106 at ECF p. 7). At a minimum, whether the Agreement applies is a question of fact more properly a matter for summary judgment. Therefore, Defendants' motion for leave to amend is denied.

Supervising Mentor Teacher, principal, and other administrative personnel while they are on the premises of the EVSC or acting on behalf of the EVSC in locations other than the premises." (*Id.* at ECF p. 107–08). The Mentor Teacher was not permitted to leave a student in a pre-student teaching experience in charge of the classroom. (*Id.* at ECF p. 108). Like UE, EVSC had the authority to remove a student from the program if, "in its sole discretion, [it] determines that removal of that student or student teacher is in the EVSC's best interests." (*Id.*).

Finally, the Agreement specifies that "no relationship of employer and employee is created by this Agreement, it being understood that [UE] and its agents, Students, and employees will act as independent contractors and shall not have any claim under this Agreement or otherwise against EVSC for vacation pay, sick leave, retirement benefits, Social Security, Workers' Compensation, disability or unemployment insurance benefits or employee benefits of any kind." (*Id.* at ECF p. 110).

### B.      Butler's Crimes

During the fall 2021 semester, Butler was engaged by UE and EVSC to provide tutoring services to students at Vogel Elementary School. (Compl. at ECF p. 6). That semester, S.A.B. and D.M.F., both kindergarteners, N.C.G., a first grader, and B.L.H., a third grader, (collectively, the "Children") were enrolled at Vogel. (*Id.* at ECF pp. 6–7). All the Children participated in Vogel's after school daycare program, but only B.L.H. and D.M.F. were involved in the tutoring program. (*Id.* at ECF p. 7).

Starting in August 2021, Butler began tutoring Vogel students in math and other subjects, generally two days per week between the hours of 3:15 p.m. and 5:00 p.m. (*Id.*). During much of his time at Vogel, Butler was left alone with numerous children. (*Id.*). In fact, Butler was allowed to regularly follow young boys into the restroom without any other adult present. (*Id.*). On

4

multiple days in November 2021 and perhaps at other times, Butler used his cell phone camera to take pictures of each of the Children in various states of undress in the school restroom. (*Id.*). In December 2021, an examination of Butler's cell phone disclosed numerous photos of the Children urinating, with their genitals exposed in several pictures. (*Id.*). Butler admitted to taking the photos and obtaining sexual gratification from them. (*Id.* at ECF p. 8). During the same semester, Butler also fondled D.M.F.'s genitals while D.M.F. was sitting at his desk and while the child was in the school restroom. (*Id.*).

Plaintiffs allege UE and EVSC placed Butler in a position of trust with respect to the Children, and that Butler exploited his position of trust to sexually assault, harass, and exploit the Children. (*Id.* at ECF p. 9). They further allege that Butler committed those crimes in the scope of his employment with UE and EVSC. (*Id.*).

## II.    Legal Standard

Defendants filed motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion to dismiss, Plaintiffs Complaint need contain "only enough facts to state a clam to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facts alleged in Plaintiffs' Complaint are entitled to the presumption of truth, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not. *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022). If the well-pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion to dismiss will be denied. *Id.* (citation omitted).

## III.     Discussion

Plaintiffs' Complaint brings fifty counts. The UE Defendants' partial motion to dismiss addresses thirty of those counts,[2] and the EVSC Defendants move to dismiss all counts. The Court will first analyze UE's partial motion to dismiss before turning to EVSC's motion to dismiss.

### A.      UE's Partial Motion to Dismiss

The UE Defendants move to dismiss thirty counts that each assert one of the following three state law theories of vicarious liability: *respondeat superior*, agency, or common-carrier. When a federal court's jurisdiction over state law claims is predicated on supplemental jurisdiction, as here, it applies the choice of law rules of the state in which it sits. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). In this case, the parties agree that the substantive law of Indiana applies. Accordingly, the Court must apply Indiana law as it believes the Indiana Supreme Court would apply it. *Green Plains Trade Grp., LLC v. Archer Daniels Midland Co.*, 90 F.4th 919, 927 (7th Cir. 2024). When the Indiana Supreme Court has squarely addressed an issue, this Court simply applies the law as articulated by the Indiana Supreme Court. *Id.* When, however, the Indiana Supreme Court "has not spoken" on a particular issue, the Court must, as best it can, "ascertain" the rule of law that the Indiana Supreme Court would apply if it were hearing the case—even if doing so requires the Court to reject the view of the Court of Appeals of Indiana. *Id.* at 927–28. With these principles in mind, the Court must

---

[2] Specifically, the UE Defendants move to dismiss Plaintiffs' claims based on *respondeat superior* or agency law principles (Counts I, IV, V, VI, VIII, XII, XIII, XVI, XVII, XVIII, XX, XXIV, XXV, XXVIII, XXIX, XXX, XXXII, XXXVI, XXXVII, XL, XLI, XLII, XLIV, XLVIII, XLIX, and L) and their claims based on common-carrier liability (IX, XXI, XXXIII, and XLV).

determine whether Plaintiffs have adequately alleged *respondeat superior*, agency, and common-carrier liability under Indiana law.

### 1.  *Respondeat Superior*

*Respondeat superior* is a doctrine of vicarious liability, which is "a legal fiction by which a court can hold a party legally responsible for the negligence of another, not because the party did anything wrong but rather because of the party's relationship with the wrongdoer." *Arrendale v. Am. Imaging & MRI, LLC*, 183 N.E.3d 1064, 1068 (Ind. 2022) (quoting *Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142, 147 (Ind. 1999)). Under *respondeat superior*, an employer not liable for its own acts can nonetheless be held liable for an employee's wrongful acts if such acts are "committed within the scope of employment." *Sword*, 714 N.E.2d at 148. But an employer cannot be held liable for the actions of an "independent contractor," because it would not be fair to hold a party liable for conduct over which it has no control. *Id.*

The UE Defendants argue that Plaintiffs have not adequately alleged (a) that UE had sufficient control over Butler to establish an employer-employee relationship, and (b) that Butler's actions were within the scope of his employment with UE.

### a.  Control

For *respondeat superior* liability to attach, UE must have had sufficient right to control Butler's activities such that UE can justifiably be held liable for his wrongful conduct. *See Cox v. Evansville Police Dep't*, 107 N.E.3d 453, 461–62 (Ind. 2018). Indiana courts look to seven non-exhaustive factors to determine whether one party has the requisite control over another to establish an employer-employee relationship: "(1) right to discharge; (2) mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment;

and, (7) establishment of the work boundaries." *GKN Co. v. Magness*, 744 N.E.2d 397, 402 (Ind. 2001); *Southport Little League v. Vaughan*, 734 N.E.2d 261, 268 n.6 (Ind. Ct. App. 2000). Generally, whether such a relationship exists is a question of fact. *GKN Co.*, 744 N.E.2d at 402.

Plaintiffs have sufficiently alleged that UE had control over Butler. As UE concedes, Butler was a student of UE, and under the Clinical Education Agreement, UE had the right to discharge Butler. (Docket No. 19-1, UE Defs.' Br. at ECF p. 9). Indeed, the Agreement states that UE may, "in its sole discretion," remove a student from the program. (Agreement at ECF p. 109). While UE contends the other factors are not met here, the factors are not meant to be exhaustive. *See GKN Co.*, 744 N.E.2d at 402. And Plaintiffs have alleged UE had the right to control Butler's actions in a number of other ways.

For example, the Agreement indicates that UE is jointly responsible for assigning students and planning the field experience, that UE coordinates with EVSC to evaluate and modify the student teacher program and inform EVSC of changes in supervision, and that a "University Supervisor" designated by UE has access to visit student teachers' classrooms "for purposes of observation and supervision." (Agreement at ECF pp. 106–08). Thus, Plaintiffs' Complaint and attached exhibits allow the reasonable inference that UE played a significant role in assigning Butler to EVSC schools, had the ability to make changes to his role as a student tutor, and had the right to directly supervise him in the classroom.

It is hard to see what more Plaintiffs need allege at the pleading stage. Plaintiffs correctly point out that all of the cases cited by the UE Defendants were decided at summary judgment after the benefit of discovery. *Cox*, 107 N.E.3d at 458; *Barnett v. Clark*, 889 N.E.2d 281 (Ind. 2008); *Stropes by Taylor v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244 (Ind. 1989); *Konkle v. Henson*, 672 N.E.2d 450 (Ind. Ct. App. 1996); *Hansen v. Bd. of Trustees of*

*Hamilton Se. Sch. Corp.*, 551 F.3d 599, 609 (7th Cir. 2008); *Southport Little League*, 734 N.E.2d at 265; *Dague v. Fort Wayne Newspapers, Inc.*, 647 N.E.2d 1138 (Ind. Ct. App. 1995). That is not surprising, because "whether an employer-employee relationship exists ultimately is a question of fact." *GKN Co.*, 744 N.E.2d at 402. Deciding factual questions at this early stage of the case is often inappropriate. *See, e.g.*, *Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363, 637 (7th Cir. 1997).

The UE Defendants' argument that Plaintiffs' *respondeat superior* claims should be dismissed for failing to allege the requisite control is rejected. The Court turns now to Defendants' argument that the claims should still be dismissed because Plaintiffs did not sufficiently allege Butler's criminal conduct was committed within the scope of his employment.

### b.    Scope of Employment

It goes without saying that sexual abuse was not part of Jacob Butler's assigned duties. But an employee's "scope of employment" extends beyond the activities he is delegated or authorized to do. *Cox*, 107 N.E.3d at 461. It encompasses some inherent risks in employment, such as an employee's acts that "naturally or predictably arise from" the activities he is authorized to perform. *Id.* "This means that the scope of employment . . . may include acts that the employer expressly forbids; that violate the employer's rules, orders, or instructions; that the employee commits for self-gratification or self-benefit; that breach a sacred professional duty; or that are egregious, malicious, or criminal." *Id.* "[W]hether particular acts come within the scope of employment is generally a question of fact for the jury." *Id.* at 463.

The UE Defendants argue that the sex crimes Butler committed were not natural or predictable consequences of the activities he was authorized to perform. More specifically, Defendants contend that the Clinical Education Agreement does not authorize student teachers to

supervise students outside the classroom and, therefore, any action conducted in the school restroom is outside the scope of employment. (Defs.' Br. at ECF p. 8). They point to *Hansen*, in which the Seventh Circuit suggested: "Indiana courts have found whether sexual misconduct is within the scope of one's employment to be a genuine issue of fact only in circumstances where the employee's job duties involved extensive physical contact with the alleged victim, such as undressing, bathing, measuring, or fitting." *Hansen*, 551 F.3d at 612 (collecting cases). But again, that case was decided at the summary judgment stage. *Id.* Defendants have not cited any case supporting the proposition that a plaintiff must specifically allege that an employee's job duties involved extensive physical contact with the victim in order to survive a motion to dismiss.

The stage of the case matters because discovery may shed light on the extent of physical conduct that might "naturally or predictably arise" from the activities Butler was authorized to perform as a student tutor. *See Cox* 107 N.E.3d at 463. While Defendants are correct that the Agreement is silent on students' responsibilities outside the classroom, it is not clear that all of the student's responsibilities are explicitly dictated in the Agreement. The Agreement requires UE to "direct students . . . to comply with EVSC's generally applicable policies for . . . volunteers" and later provides that students shall be "under the direction and control of the Supervising or Mentor Teacher." (*Id.* at ECF p. 107). A mentor teacher might delegate to a student tutor the responsibility of accompanying Vogel students outside the classroom—perhaps even to the bathroom. (*See* Compl. at ECF p. 7 (alleging that Butler was permitted to follow children to the bathroom)). What happened on those trips might, therefore, have been a predictable consequence of Butler's actual job responsibilities. *See, e.g.*, *Southport Little League*, 734 N.E.2d at 269–70. But that question cannot be answered without the benefit of discovery.

Like the degree of control UE had over Butler, whether his acts were committed in the scope of his employment is ultimately a question of fact inappropriate for the Court to resolve at this early stage of the case. *See Cox*, 107 N.E.3d at 461. Accordingly, the UE Defendants' motion to dismiss Plaintiffs' *respondeat superior* claims is denied.

## 2. Agency

Like *respondeat superior*, agency liability is a form of vicarious liability. *Sword*, 714 N.E.2d at 147. "Generally, a principal who controls or has the right to control the physical conduct of his agent in the performance of a service is an employer upon whom liability for the torts of the agent may be imposed." *Dague*, 647 N.E.2d at 1140. Some forms of agency liability can be distinct from *respondeat superior* and do not require the formation of an agency relationship. *See, e.g.*, *Arrendale*, 183 N.E.3d at 1068 (describing the doctrine of apparent agency). However, in this case Plaintiffs' agency claims appear to be no different than their *respondeat superior* claims. In fact, Plaintiffs' Complaint consistently asserts "*respondeat superior* and/or agency law" claims under the same heading: "vicarious liability." (*See, e.g.*, Compl. at ECF pp. 22–23, 46, 69, 92). As the Court discussed above, Plaintiffs' *respondeat superior* claims may proceed, so their identical agency law claims will also proceed.

To the extent Plaintiffs' agency law claims are distinct from *respondeat superior*, Defendants' arguments in support of dismissal are not persuasive. Defendants contend that because Butler committed independent torts for his own benefit, UE cannot be held liable for his conduct unless it had some knowledge or reason to know of Butler's conduct. (Defs.' Br. at ECF p. 10 (citing *Southport Little League*, 734 N.E.2d at 275)). They submit that Plaintiffs "have not pled any red flags" that should have put UE on notice of the danger Butler posed. (*Id.*).

Defendants cite no authority for the proposition that Plaintiffs must plead "red flags," and surely doing so is not required to survive a motion to dismiss a Rule 8 pleading. Without the benefit of discovery, how are Plaintiffs to know what UE knew? *See* Fed. R. Civ. P. 8(a) (requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief"); *cf.* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged *generally*.") (emphasis added).

In any case, Plaintiffs have plausibly alleged UE had "reason to know" of Butler's conduct. *Southport Little League*, 734 N.E.2d at 275. The Clinical Education Agreement provides that a University Supervisor or other designated representative of the University "shall have access, at all reasonable times, to visit the classroom(s) to which students and student teachers have been assigned for purposes of observation and supervision." (Agreement at ECF p. 108). If a University Supervisor had visited Vogel Elementary, they may have learned, among other things, that Butler was being permitted to "regularly follow young boys into the restroom unsupervised." (Compl. at ECF p. 7). Defendants motion to dismiss Plaintiffs' agency claims is denied.

### 3.     Common-Carrier

Common-carrier liability is a third type of vicarious liability that "does not depend on whether employees' injurious conduct fell within the scope of employment." *Cox*, 107 N.E.3d at 465. "When the employer has assumed a common-carrier duty to exercise extraordinary care for its patrons, the employer can be liable whether or not an employee's tortious acts were within the scope of employment." *Id.* The question of whether a common-carrier duty exists is a matter of law for the court to decide. *Id.*

Defendants are correct that UE is not a common carrier. While Indiana's common-carrier duty is broader than in many other states, that non-delegable duty "arises from the parties' 'contract of passage,'" which forms the basis of the parties' relationship. *Id.* at 466. A "contract of passage" is one "in which the carrier invites the public to pay a fare in exchange for safe passage." *Id.* "For those who accept that invitation to become patrons or guests, the carrier assumes a special, contractual duty of protection for the agreed-upon "period of accommodation.'" *Id.* A contract of passage is a "fundamental feature," without which the common-carrier duty does not apply. *Id.* Even relationships involving lopsided responsibility and control, such as a relationship between a school and its students, do not impose a common-carrier duty absent a contract of passage. *Id.* (citing *Hansen*, 551 F.3d at 615).

Plaintiffs have not alleged any contract of passage between the parties—that is, between Plaintiffs and UE—formed the basis of the parties' relationship. Further, the Indiana Supreme Court's decision in *Cox* noted that common-carrier liability has not been extended to the relationship between a school and its students. 107 N.E.3d at 466. However, Plaintiffs submit that the Court only noted so "in passing." *Id.* True, the statement about the relationship between schools and their students was dictum not essential to the Court's decision. *See Cox*, 107 N.E.3d at 466. But there is little reason to think Indiana would recognize an exception to the "fundamental" requirement of a contract of passage, *id.*, especially because "well-settled Indiana law does not impose a non-delegable duty on [a school] for the safekeeping of its students." *Hansen*, 551 F.3d at 615; *see also Miller v. Griesel*, 308 N.E.2d 701, 706 (Ind. 1974) (a grammar school's duty of care to its students is to exercise reasonable care and supervision for their safety). Plaintiffs' argument that compulsory attendance, the doctrine of *in loco parentis*, and the fact that parents pay for their children to go to school somehow combines to "come much closer"

to establishing a contract of passage is not persuasive. (Docket No. 54, Pls.' Resp. at ECF p. 26). Defendants motion to dismiss is granted as to Plaintiffs' common-carrier claims.

### B.      EVSC'S Motion to Dismiss

EVSC moves to dismiss all of Plaintiffs claims, arguing that: (1) EVSC is immune from Plaintiffs' claims under the Indiana Tort Claims Act; (2) Plaintiffs' *respondeat superior* and agency law claims should be dismissed because Butler was not acting within the scope of his employment; (3) Plaintiffs' direct liability claims are really *respondeat superior* or agency law claims that should be dismissed; (4) Plaintiffs lack standing to pursue a Title IX claim on behalf of their children; (5) Plaintiffs lack standing to assert a claim on behalf of their children under the federal pornography statutes, 18 U.S.C. § 2255; (6) Plaintiff Haley Kanizar cannot bring a battery claim on behalf of her child; and (7) Plaintiff's common-carrier claims fail because no contract of passage exists. The Court will discuss each argument in turn.

### 1.      Indiana Tort Claims Act

EVSC first asserts immunity under the Indiana Tort Claims Act, which precludes liability for government entities, like EVSC, if a loss results from an "act or omission of anyone other than the governmental entity or the governmental entity's employee." Ind. Code § 34-13-3-3(10). A "person presently or formerly acting on behalf of a governmental entity, whether temporarily or with or without compensation," is an "employee" under the Tort Claims Act. Ind. Code § 34-6-2-38(a). An "independent contractor" is not an "employee." *Id.* § 34-6-2-38(b)(1).

Plaintiffs' have plausibly alleged that Butler was "presently or formerly acting on behalf of" EVSC. Ind. Code § 34-6-2-38(a). The Clinical Education Agreement states that "Students and student teachers shall be subject to the rules and regulations of EVSC and under the direction and control of the Supervising or Mentor Teacher, principal, and other administrative personnel

while they are on the premises of the EVSC or *acting on behalf of the EVSC*." (Docket No. 1-1 at ECF pp. 106–07 (emphasis added)). EVSC also maintained the right to remove a student or student teacher "in its sole discretion." (*Id.* at ECF p. 108).

EVSC insists that the combination of the statutory scheme and the Clinical Education Agreement establish that Butler was an independent contractor, relying on *Jacks by Jacks v. Tipton Community School Corporation*, 94 N.E.3d 712 (Ind. Ct. App. 2018). In that case, the court considered whether a school bus driver was an employee of the school corporation or an independent contractor. *Id.* at 717–18. The plaintiffs argued that the court should apply a ten-factor common law test, but the defendant contended the statutory scheme already delineated the specific circumstances under which a bus driver was an independent contractor. The statute expressly provided that an "employment contract" for a bus driver must have certain terms, including that the school corporation provides the driver with the bus. *Id.* at 717 (citing Ind. Code § 20-27-2-4). Drivers under a "transportation contract," on the other hand, "promise[d] to provide, in addition to driving services, a school bus[.]" *Id.* (citing Ind. Code § 20-27-2-12). The drivers were also paid and insured differently. Drivers under an employment contract were paid in the same manner as other noninstructional personnel and were insured by the school corporation, but drivers under a transportation contract were paid on a per diem basis at a rate fixed by the contract and were required to provide their own liability insurance. *Id.* at 717–18 (citing Ind. Code §§ 20-27-8-7, 20-27-5-4). Under these circumstances, the "General Assembly's comprehensive statutory scheme regarding school bus transportation clearly differentiate[d] between 'employment contracts' and 'transportation contracts.'" *Id.* at 718. Thus, it was unnecessary to apply another test.

EVSC claims this case is analogous because Indiana statutes permit UE and EVSC to "set out the responsibilities and rights of the public school corporations, the institutions, and the students" by written agreement when providing for students' teaching experiences. Ind. Code § 20-26-5-24. Pursuant to that statutory scheme, EVSC set forth in the Clinical Education Agreement that students are independent contractors through two provisions. The first states: "Students and student teachers are not officers, employees or agents of EVSC." (Docket No. 1-1 at ECF p. 107). The second provides: "Notwithstanding any provision to the contrary contained herein, no relationship of employer and employee is created by the Agreement, it being understood that [UE] and its agents, Students, and employees will act as independent contractors and shall not have any claim under this Agreement or otherwise against EVSC for vacation pay, sick leave, retirement benefits, Social Security, Workers' Compensation, disability or unemployment insurance benefits or employee benefits of any kind." (*Id.* at ECF p. 110).

There are two problems with EVSC's argument. First, the statutory scheme is far less clear in this case than in *Jacks by Jacks*. Whereas the statute itself in *Jacks by Jacks* set forth specifically which contracts for bus drivers were "employment contracts" and which contracts were not, the lone statute cited by EVSC does not draw such an obvious distinction between independent contractors and employees. *See* Ind. Code § 20-26-5-24. Rather, the statute says only that an agreement such as the Clinical Education Agreement "must set out the responsibilities and rights of the public school corporations, the institutions, and the students[.]" *Id.*

The second problem with EVSC's argument is that the Clinical Education Agreement between UE and EVSC does not necessarily control whether EVSC is liable for Butler's torts against third parties. EVSC is undoubtedly correct that the Clinical Education Agreement

16

characterizes students like Butler as independent contractors, but Indiana courts analyzing "statutory claims and claims based in tort" do not consider the parties' contractual characterization of the relationship dispositive. *Mortg. Consultants, Inc. v. Mahaney*, 655 N.E.2d 493, 496 (Ind. 1995) (noting that an employer-employee relationship for purposes of statutory benefits may be found despite the parties' contractual agreement that worker was an independent contractor). In other words, the provisions of the Agreement referring to students like Butler as independent contractors may govern whether such students have "any claim under th[e] Agreement or otherwise against EVSC for vacation pay, sick leave, retirement benefits, Social Security, Workers' Compensation, disability or unemployment insurance benefits or employee benefits of any kind." (Docket No. 1-1, Agreement at ECF p. 110). But UE and EVSC's characterization of Butler's relationship with EVSC, "while significant," does not automatically make Butler an independent contractor for the purposes of determining whether EVSC is immune under the Tort Claims Act. *Cf. Mortg. Consultants*, 655 N.E.2d at 496.

Rather, as stated above, the Tort Claims Act broadly defines an "employee" as "a person presently or formerly acting on behalf of a governmental entity, whether temporarily or permanently or with or without compensation." Ind. Code § 34-6-2-38. Because the Agreement itself indicates that students like Butler "act[] on behalf of the EVSC," (Docket No. 1-1 at ECF p. 108), Plaintiffs' allegations are sufficient to survive a motion to dismiss based on the Tort Claims Act.

### 2.    *Respondeat Superior and Agency*

The EVSC Defendants also contend that Plaintiffs' *respondeat superior* and agency claims, which they group together, should be dismissed because Butler was not acting within the scope of his employment with EVSC. Defendants largely repeat arguments made by the UE

Defendants. Namely, that an employee's job duties must involve extensive physical contact with the alleged victim for sexual misconduct to fall within the scope of employment and that Plaintiffs failed to plead "red flags." The Court rejects these arguments for the same reasons expressed above. "Whether an act falls within the scope of employment is generally a question of fact." *Cox*, 107 N.E.3d at 460. Plaintiffs have plausibly alleged that the crimes Butler committed naturally or predictably arose from his employment context, which is all that is required at this stage. *See id.* at 463–64.

### 3.   Direct Liability Claims

Unlike the UE Defendants, the EVSC Defendants move to dismiss all of Plaintiffs' direct liability claims, such as their claims for negligence; assumed duty of care; negligent hiring, training, and supervision; and negligent supervision of a child. The EVSC Defendants contend that, although those claims "do not expressly allege EVSC liability under *respondeat superior* or agency law," they are in fact *respondeat superior* or agency law claims. (Docket No. 32 at ECF p. 10). The EVSC Defendants do not expand on this argument, other than to say that "the only basis upon which EVSC could be liable for Butler's misconduct under any state tort claim is *respondeat superior* or agency law." (*Id.*). The Court is not persuaded.

Take Plaintiffs' negligent training and supervision claim for example. Unlike the doctrine of *respondeat superior*, which imposes indirect liability on the employer for its employee's actions within the scope of employment, a negligent training and supervision claim seeks to hold the employer *directly* liable for its own failure to supervise an employee who acted *outside* the scope of his employment. *Cmty. Health Network, Inc. v. McKenzie*, 185 N.E.3d 368, 377 (Ind. 2022). Plaintiffs' Complaint adequately alleges that EVSC negligently hired, trained, and supervised Butler. (*See, e.g.*, Docket No. 1-1 at ECF pp. 7, 20–21 ("In fact, Defendant Butler was

allowed to regularly follow young boys into the restroom unsupervised and without any other adult being present.")).

In its reply, EVSC asserts that Plaintiffs' direct liability claims must be dismissed because Plaintiffs alleged in paragraph forty-five of their Complaint that Butler acted within the scope of his employment, and that paragraph was incorporated into the other paragraphs of the Complaint. (Compl. at ECF p. 9). Therefore, Defendants insist, Plaintiffs do not allege any action outside the scope of Butler's employment that could support an action for direct negligence. But Plaintiffs are permitted to plead in the alternative, and the pleading is sufficient if either statement of the claim is sufficient. Fed. R. Civ. P. 8(d)(2). Moreover, even in the summary judgment context, the Indiana Supreme Court has permitted both negligent training and *respondeat superior* claims to proceed: "though these are alternative theories of relief that ultimately seek the same result, the claims under both can survive summary judgment if there is a genuine issue of material fact on the scope-of-employment issue." *Cmty. Health Network*, 185 N.E.3d at 377. So too here. Plaintiffs have adequately alleged that EVSC failed to supervise Butler, and it will not be known whether Butler acted within the scope of his employment until after discovery has been conducted. Dismissal is therefore inappropriate.

### 4.    Challenges to Plaintiff Parents' Standing

Next, EVSC challenges the standing of Plaintiffs, parents who sue on behalf of their minor children, to assert: (1) a sex discrimination claim under Title IX, (2) a claim under the federal pornography statutes, 18 U.S.C. § 2255, and (3) Plaintiff Haley Kanizar's individual claims for battery and sexual battery. EVSC argues that it was not the children's parents who suffered sex discrimination in education in violation of Title IX, were victimized while a minor in violation of the federal pornography statutes, or were subjected to offensive contact. (EVSC

19

Defs.' Br. at ECF pp. 8–10). Rather, EVSC contends, only the children can bring those claims. EVSC's argument is meritless.

It is utterly routine for a parent to sue on behalf of their child when the child is injured. The Federal Rules of Civil Procedure provide that a minor may sue by a "next friend," Fed. R. Civ. P. 17(c)(2), and a next friend can be (and often will be) "the plaintiff's parents." *T.W. by Enk v. Brophy*, 124 F.3d 893, 897 (7th Cir. 1997). It is their children's claims that the Plaintiff parents are asserting, because a child cannot maintain a suit in federal court without being represented by a competent adult. *Id.* at 895. Accordingly, the Plaintiff parents have standing to assert these claims on behalf of their children.

In its reply, the EVSC Defendants go beyond the question of whether the parents can represent their children and raise new arguments that the claims are legally deficient in other ways. (Docket No. 73, EVSC Defs.' Reply at ECF pp. 5–8). "[A]rguments raised for the first time in a reply brief are waived." *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019). The Court declines to address the EVSC Defendants' new arguments to which Plaintiffs lacked an opportunity to respond. Plaintiffs' claims based on Title IX and the federal pornography statutes and Haley Kanizar's state-law battery claims will proceed.

### 5. Common Carrier

Like the UE Defendants, the EVSC Defendants move to dismiss Plaintiffs' claims on the common carrier doctrine because the Indiana Supreme Court has rejected a non-delegable duty as to schools. The Court agrees Plaintiffs' common-carrier claims must be dismissed.

Recall that a "contract of passage" that forms the basis of the parties' relationship is a "fundamental feature" of a common-carrier duty. *Cox*, 107 N.E.3d at 466. Without a contract of passage, the common carrier doctrine does not apply. *Id.* The Court dismissed Plaintiffs' claims

against UE because Plaintiffs had no contract with UE at all, let alone a contract of passage. Plaintiffs' claims against EVSC are different because Plaintiffs have produced two forms provided by EVSC and signed by Plaintiffs. However, these were not contracts of passage, "in which the carrier invites the public to pay a fare in exchange for safe passage." *Cox*, 107 N.E.3d at 466.

The first form is a document Plaintiffs signed to enroll their children in EVSC's "Extended Day Center Program." (Docket Nos. 64-1, 64-2, 64-3, & 64-4 at ECF pp. 4–6). The form is focused on the parent's responsibilities and expectations and makes few explicit promises to the enrollees—though it does suggest EVSC "strives to create a positive, nurturing, and safe environment." (*Id.*). The online description of the "Extended Day Center," attached by Plaintiffs, indicates that "the Center" provides "afterschool programming designed to build on what students have studied during the school day." (Docket No. 64-6 at ECF p. 1). The program is available for "children who need care before and/or after school." (*Id.*). "Parents are responsible for paying all fees and for transportation." (*Id.*). Children may purchase breakfast in the morning program, and snacks are provided for the afternoon program. (*Id.*). "Opportunities will be provided for study and enrichment. The ED Centers have space for students to do homework, read for pleasure, and participate in recreational activities." (*Id.*). These forms contain no assurances of safety above and beyond the school's normal duty to "exercise reasonable care to preserve safety." *Cox*, 107 N.E.3d at 466.

Plaintiffs maintain the forms are contracts of passage because they voluntarily paid extra to have their children cared for, but it is unclear why that distinction justifies departing from Indiana's well-settled law that schools do not owe a non-delegable duty for the safekeeping of their students. *See Cox*, 107 N.E.3d at 466. Even relationships that involve "lopsided autonomy,

responsibility, and control" do not necessarily invoke the common-carrier nondelegable duty, which has only been imposed in a limited set of circumstances. *Id.* The Court is not persuaded that an enrollment form for an after-school "Extended Day Center," which appears to merely extend the school's normal services until the early evening, is a contract of passage that warrants departing from a school's normal duty of care to its students.

That conclusion applies with even more force to the second form Plaintiffs attach—a sign-up sheet for the college tutoring program at Vogel. (Docket Nos. 64-1 & 64-4 at ECF p. 7). The college tutor sign-up form states: "We will soon be having tutors to help our children here at Vogel [sic] would you like for your child / children to be tutor[ed]? What a great opportunity." (*Id.*). The form then asks for a signature and provides a contact number if a parent has any questions. (*Id.*). There is no indication in the one-page college tutoring enrollment form that EVSC "invite[d] the public to pay a fare in exchange for safe passage," thereby assuming a non-delegable duty above the normal duty it owes to its students. *See Cox*, 107 N.E.3d at 466. Plaintiffs common-carrier claims are dismissed.

## IV.    Conclusion

The UE Defendants' Partial Motion to Dismiss (Docket No. 19) is **GRANTED in part and DENIED in part**. It is **GRANTED** as to Plaintiffs' claims based on the common carrier doctrine (Counts IX, XXI, XXXIII, and XLV). It is **DENIED** as to Plaintiffs' *respondeat superior* and agency law claims. The UE Defendants' motion to amend their motion to dismiss (Docket No. 98) is also **DENIED**.

The EVSC Defendants' Motion to Dismiss (Docket No. 31 is **GRANTED in part and DENIED in part**. It is **GRANTED** as to Plaintiffs' common-carrier claims (Counts IX, XXI, XXXIII, and XLV). It is **DENIED** as to all other claims.

**IT IS SO ORDERED**.

Dated:  March 11, 2024

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.