UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| ASHLEE E. PADGETT, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.  ) | Case No. 3:23-cv-00071-MPB-CSW |
| ) | |
| JACOB CARL BUTLER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **PLAINTIFFS' TRIAL BRIEF**

This case arises out injuries suffered by the Minor Plaintiffs, B.L.H., S.A.B., N.C.G., and D.M.F., and their respective parents, Plaintiffs Ashlee E. Padgett, Casey A. Boyer and Kristy A. Martin, Sean R. Giolitto and Christopher S. Pentecost, and Haley Kanizar, as a result of events occurring in the after school day care program at Vogel Elementary School during the months of October, November, and December 2021.

For the Court's convenience, this Trial Brief addresses the following topics:

I.  Overview

II.  Litigation

III.  Causes of Action that Remain

    **A.**  As Against the EVSC Defendants

    **B.**  As Against Defendant Butler

IV.  Comparative Fault Applies

V.  No Credit or Setoff for UE Settlement

VI.  Tort Claims Act Cap Applies to Each Incident, Separately, for Each Plaintiff

## I.     Overview

Vogel is a K through 6 school operated by Defendant EVSC on Evansville's northeast side. During the Fall semester of 2021, all of the Minor Plaintiffs were students at Vogel, ranging in age from kindergarten through the third grade, and all were involved in the after school day care program operated at the school by EVSC employees.

Early on that school year, EVSC agreed to have education majors at the University of Evansville ("UE") provide tutoring services to students in the after school day care program who might benefit from some extra help. Haley Kanizar signed a permission slip, authorizing her son, D.M.F., to take part in the tutoring program. Ashlee E. Padgett (now known as Ashlee E. Mercer) also signed such a form for her son, B.L.H., but he never actually participated in any tutoring sessions. Neither S.A.B. nor N.C.G. were authorized by their parents, Casey A. Boyer and Kristy A. Martin, and Sean R. Giolitto and Christopher S. Pentecost, respectively, to take part in the tutoring program.

Six UE students signed up to provide tutoring services at Vogel. One of them, Defendant Jacob Carl Butler, shortly after beginning his work at Vogel, began lingering in the boys' student bathroom at the school. Each day he was there, Defendant Butler would visit the children's bathroom twice and spend some twenty minutes in the children's bathroom, surreptitiously taking videos and dozens, if not hundreds, of photographs of a number of young boys at the school (some of whom were not even participating in the tutoring program), including each of the four Minor Plaintiffs, in various states of undress while using the toilet facilities. Also, Defendant Butler was allowed to spend significant amounts of time one-on-one with the children in an unsupervised classroom.

After finally being caught engaging in such activities, on or about December 3, 2021, Defendant Butler admitted to EVSC Police Department Chief Timothy W. Alford to physically molesting one of the boys, D.M.F., on at least two occasions, fondling him in the bathroom, as well as in the secluded classroom where Butler took the young boys to tutor them outside the sight, hearing, and supervision of EVSC day care staff. Defendant Butler was criminally charged with committing various sexual offenses against the four Minor Plaintiffs (as well as two other young boys not involved in this litigation); he pled guilty to 14 of those Counts, resulting in the imposition of a sentence of ten (10) years executed in the Indiana Department of Correction.

When asked, during the course of his deposition taken in this proceeding, about inappropriately touching each of the four Minor Plaintiffs, Defendant Butler asserted his Fifth Amendment privilege against self-incrimination, thus giving rise to an evidentiary inference in this civil case that he did, in fact, physically molest each of the other three young boys, as well.

## II.   Litigation

Suit was originally filed by the Plaintiffs against Defendant Butler, the EVSC Defendants, and the UE Defendants in the Vanderburgh Circuit Court. The action was timely removed to this Court by UE, under federal question jurisdiction, given the assertion of claims for relief under Title IX of the Education Amendments of 1972, codified at 20 U.S.C. § 1681, et seq. ("Title IX"), and various Federal Child Pornography Statutes, codified at 18 U.S.C. §§ 2251, 2252A, 2252, and 2255, entitled "Civil Remedy for Personal Injuries," and colloquially referred to as "Masha's Law."

The UE Defendants were dismissed as parties to this proceeding, at Plaintiffs' instance, [Dkt. 237], and by Order of the Court, [Dkt. 244], entered on October 21, 2024. Prior to that, the Court had dismissed the Plaintiff Parents' individual claims for relief under Title IX and Masha's

Law, and Plaintiff Haley Kanizar's individual claims arising from the battery and sexual battery of her son, D.M.F., while leaving intact all of the related claims for relief asserted by each of the Plaintiff Parents on behalf of their respective minor children. [Dkt. 167.] More recently, the Court granted partial summary judgment to EVSC upon various claims seeking to impose vicarious liability upon EVSC for the acts and conduct of Defendant Butler, under the doctrine of *respondeat superior* and/or Indiana agency law, as well as Plaintiffs' Title IX claims. [Dkt. 256.]

### III. Causes of Action that Remain

#### A. As Against the EVSC Defendants

At this time, then, the case is prepared to proceed to trial before a jury on Tuesday, May 6, 2025, [Dkt. 222], upon all of the Plaintiffs' claims asserting *direct liability* against EVSC, as follows:

- Negligence (Counts II, XIV, XXVI, XXXVIII [2, 14, 26, 38]);

- Assumed Duty of Care (Counts III, XV, XXVII, XXXIX [3, 15, 27, 39]);

- Negligent Hiring, Training, and Supervision (Counts VII, XIX, XXXI, XLIII [7, 19, 31, 43]);

- Negligent Supervision of a Child (Counts X, XXII, XXXIV, XLVI [10, 22, 34, 46]); and

- Negligent Infliction of Emotional Distress (pursuant to *K.G. by Next Friend Ruch v. Smith*, 178 N.E.3d 300 (Ind. 2021)) (Counts IV, XVI, XXVIII, XL [4, 16, 28, 40]).

### B. As Against Defendant Butler

In addition, the Plaintiffs' following claims against Defendant Butler remain to be resolved at trial:

- Negligence *Per Se* (Counts I, XIII, XXV, XXXVII [1, 13, 25, 37]);

- Negligence (Counts II, XIV, XXVI, XXXVIII [2, 14, 26, 38]);

- Negligent Infliction of Emotional Distress (Counts IV, XVI, XXVIII, XL [4, 16, 28, 40]);

- Intentional Infliction of Emotional Distress (Counts V, XVII, XXIX, XLI [5, 17, 29, 41]);

- Invasion of Privacy (Counts VI, XVIII, XXX, XLII [6, 18, 30, 42]);

- Negligent Supervision of a Child (Counts X, XXII, XXXIV, XLVI [10, 22, 34, 46]);

- Federal Child Pornography Statutes ("Masha's Law") (Counts XII, XXIV, XXXVI, XLVIII [12, 24, 36, 48]);

- Battery (Count XLIX [49]); and

- Sexual Battery (Count L [50]).

### IV. Comparative Fault Applies

EVSC and its Board of School Trustees are both governmental entities.[1] As such, the Plaintiffs' claims against them are governed, in part, by the Indiana Tort Claims Act ("ITCA"), codified at Ind. Code §§ 34-13-3-1 through -25, inclusive.

---

[1] For purposes of Title 34 of the Indiana Code, governing "Civil Law and Procedure," a "governmental entity" is defined to mean "the state or a political subdivision of the state." Ind. Code § 34-6-2-49(a) (expressly including such definition for purposes of the ITCA, under IC 34-13-3). A "political subdivision," in turn, includes a school corporation, as well as its governing

Throughout these proceedings, however, the EVSC Defendants have staunchly and steadily denied that Defendant Butler was ever an employee, or was ever acting as an employee, of EVSC. In its eyes, at least, Defendant Butler is a private citizen. If that be so, then the Plaintiffs' state-law claims against him are not covered by the ITCA,[2] but fall squarely within the ambit of the Indiana's Comparative Fault Act ("CFA"), codified at Ind. Code §§ 34-51-2-1 through -19, inclusive.

The Indiana Supreme Court recently addressed the handling of cases brought by plaintiffs seeking tort damages from both governmental and non-governmental defendants in the same lawsuit, or what it called "mixed-theory" cases. *See generally Davidson v. State*, 211 N.E.3d 914 (2023). There, a woman was injured in a single-vehicle collision which occurred when she was riding in a semi-truck driven by her boyfriend; he fell asleep and crashed into an overpass-bridge pier that was part of the Interstate 69 construction project in Monroe County, Indiana. *Id.* at 919. She initially sued the trucking company which employed her boyfriend in Lake County. After obtaining a judgment in that proceeding, and receiving insurance proceeds from the trucking company's insurer, she sued other defendants (both governmental and nongovernmental entities) in Monroe County, Indiana, for injuries arising out of the same accident. *Id.* at 920.

Our highest court held that the claims asserted in the second action were barred by the doctrine of issue preclusion, and, in order to avoid such a result, "a plaintiff seeking tort damages from both government and nongovernment defendants must sue all such tortfeasors in one

---

board or commission. Ind. Code § 34-6-2-110(9)-(10) (again specifically referring to ITCA, under IC 34-13-3).

[2]  The title of the enactment itself "reveals that ITCA applies to 'Tort Claims Against Governmental Entities and Public Employees[.]'" *Ake v. Nat'l Educ. Ass'n – South Bend*, 531 N.E.2d 1178, 1181 (Ind. Ct. App. 1998). *See also Hurt v. Vantlin*, No. 3:14-cv-00092-JMS-WGH, 2015 WL 5837615, at *13 (S.D. Ind. Oct. 6, 2015) ("by its explicit terms, the ITCA applies only to governmental entities in Indiana").

lawsuit." *Id.* at 919. In reaching that conclusion, the court noted that, under the CFA, the Lake County court was required to apportion one hundred percent (100%) of the fault for the collision, among all parties and non-parties, and that court determined, conclusively, that only the trucking company was at fault for Davidson's injuries. *Id.* at 921. By establishing a system which apportions all liability and damages in the same lawsuit, the CFA effectively requires plaintiffs to name all potential tortfeasors in a single suit, or risk inability to collect from additional parties in a later action. *Id.* at 922. By not naming any of the defendants from the Monroe County suit in the first action, Davidson lost the ability to have any fault apportioned to those entities. *Id.* at 923.

Davidson further argued that, even if the Lake County suit necessarily adjudicated who caused her injuries, it could not have addressed that issue with respect to her claims against the State of Indiana and the Indiana Department of Transportation, because tort claims against governmental entities are excluded from the application of the CFA. *Id.* at 923. The court disagreed, noting that the CFA "has far reaching scope. It 'governs any action based on fault that is brought to recover damages for injury or death to a person or harm to property, except as provided in subsection (b).'" *Davidson*, 211 N.E.3d at 923 (quoting I.C. 34-51-2-1(a)). Subsection (b) exempts only two types of actions, one being claims "brought against a qualified health care provider . . . for medical malpractice[,]" and the second being claims accruing before 1985. *Davidson*, 211 N.E.3d at 923 (quoting I.C. 34-51-2-1(b)); *see also Penn Harris Madison Sch. Corp. v. Howard*, 861 N.E.2d 1190, 1193 (Ind. 2007) (noting that 1985 was the year the CFA went into effect). It does not, however, exclude actions involving governmental defendants. *Davidson*, 211 N.E.3d at 923.

7

Yet, while the CFA applies to "actions" against governmental defendants, it does not apply to "tort claims" asserted against such defendants within those actions. *Id.* The CFA, after all, states that it "'does not apply in any manner to tort claims against governmental entities or public employees under IC 34-13-3[.]'" *Id.* (quoting I.C. 34-51-2-2). However, the CFA requires the finder of fact to consider and apportion the fault of "'all persons who caused or contributed to cause the alleged injury'" regardless of whether they could be named as parties. *Davidson*, 211 N.E.3d at 923 (citing I.C. 34-51-2-7(b)(1), I.C. 34-51-2-8(b)(1)). Thus, if even one claim in an action is subject to the CFA, all of the claims brought within it must be considered for full apportionment of fault. *Davidson*, 211 N.E.3d at 923.

"In practice," then, the court continued, "when a plaintiff brings a mixed-theory case that alleges both government and non-government defendants are at fault for the plaintiff's injuries, the [CFA] applies to require the jury to apportion a percentage of fault and damages to all defendants and nonparties[,]" specifically including the governmental defendants. *Davidson*, 211 N.E.3d at 923-24. It is true that such apportionment of damages does not affect other common-law aspects of the claims against the governmental entities, such as the continued viability of contributory negligence as a defense. *Id.* at 924.[3]

But, as to the question of damages in this case, the jury will need to apportion fault among the claimants, the defendants, and any non-parties, in accordance with the provisions of I.C. 34-51-2-8. It should not be forgotten that, after the UE Defendants were dismissed as parties

---

[3] Here, it should be noted that, under Indiana law, "'[c]hildren under the age of 7 years are conclusively presumed to be incapable of being contributorily negligent[,]'" and there exists "a rebuttable presumption that children between the ages of seven and 14 are incapable of contributory negligence[.]" *Clay City Consol. Sch. Corp. v. Timberman*, 918 N.E.2d 292, 297 (Ind. 2009) (quoting *Creasy v. Rusk*, 730 N.E.2d 659, 662 (Ind. 2000)). At the time of the events at issue in the Complaint, D.M.F. was only aged five (5), S.A.B. was six (6), N.C.G. had just turned seven (7), and B.L.H. was only eight (8) years of age.

8

to this action, the EVSC Defendants sought, [Dkt. 247], and obtained, [Dkt. 249], leave of the Court to supplement their Affirmative Defenses so as to add the UE Defendants "as non-parties for purposes of allocating any fault under Indiana's Comparative Fault Act." [Dkt. 247, p. 1, ¶ 3; Dkt. 249.] In so doing, EVSC expressly acknowledged that the CFA must control the jury's assessment of damages in this case, at least insofar as the jury does not determine that Defendant Butler was, indeed, an employee of EVSC at the time of the incidents of which the Plaintiffs complain.

## V. No Credit or Setoff for UE Settlement

That being so, the Indiana Supreme Court has also held that, under such an apportionment of comparative fault, a defendant electing to proceed to trial is not entitled to any credit or setoff for any amount which may have been paid to a plaintiff by way of settlement by another defendant for the same injuries, whether or not the latter is named as a nonparty for purposes of apportionment of fault by the jury. *R.L. McCoy, Inc. v. Jack*, 772 N.E.2d 987, 987-88 (Ind. 2002); *Mendenhall v. Skinner Broadbent Co., Inc.*, 728 N.E.2d 140, 141, 145 (Ind. 2000).

In *Mendenhall*, our supreme court held that no credit should be given to non-settling defendants for amounts paid for the same injury by settling defendants who were not named as non-parties at trial. *R.L. McCoy*, 772 N.E.2d at 987. The subsequent case answered the question left unresolved by the earlier opinion: "where defendants are severally liable, does a defendant who goes to trial get credit for amounts paid by nonparty defendants who settled the plaintiffs' claims against them?" *Id.* at 987-88. The court held that they do not. *Id.* at 988.

Under the common law, credits for a settlement "were a tool to avoid overcompensation of plaintiffs." *Id.* at 989. That is because that regime incorporated the doctrine of joint and

several liability, under which "each defendant whose negligence contributed to the plaintiff's loss was liable for the *entire* amount of damages." *Id.* (emphasis added). Absent a credit for payments by settling defendants, the lone defendant standing at trial "could be liable for an amount greatly in excess of its fair share, and the result was to overcompensate the plaintiff. There were no nonparty defenses, and the jury was not aware of an absent tortfeasor's settlement." *Id.* at 989.

With the adoption of the CFA in 1985, two important changes were made. "First, it replaced joint and several liability with several liability, leaving each defendant responsible only for its share of the total liability." *R.L. McCoy*, 772 N.E.2d at 989-90 (citing *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104, 109 (Ind. 2002); Matthew Bender, 2 COMPARATIVE NEGLIGENCE § 13.30[3][c] (2001) ("The Indiana statute expressly incorporates several liability.")). "Second, it permitted the assertion of a nonparty defense, allowing a defendant to prove the negligence of an absent or settling tortfeasor." *R.L. McCoy*, 772 N.E.2d at 990 (citing I.C. 34-51-2-15). "Thus the jury's apportionment of fault now provides a more complete picture of the relative responsibility for the plaintiff's injuries." *R.L. McCoy*, 772 N.E.2d at 990.

In other words, by asserting a non-party defense as against the UE Defendants, and arguing for apportionment of fault against Defendant Butler, as well, EVSC will have the opportunity to convince the jury that EVSC should be held liable only for its fair share of the overall liability toward the Plaintiffs on their claims. Under the CFA's scheme for apportioning fault, each defendant is liable only severally, that is, for its portion alone, and not for the whole of the damages awarded. Accordingly, a settlement by another defendant (*e.g.*, UE) "represents the bargained value of the claims against that defendant[;] . . . no other defendant is liable for

that claim, and none has a claim to benefit from its overvaluation by the settling defendant or undervaluation by the plaintiff as compared to the jury's assessment." *R.L. McCoy*, 772 N.E.2d at 991.

Even assuming *arguendo* that the EVSC Defendants would be entitled to a setoff or credit, the setoff/credit would not be applied until after a jury verdict, and the jury would not be entitled to know of either the fact or amount of the Plaintiffs' settlement with UE. Rather, the Court would simply subtract the amount of the settlement from the jury verdict. *E.g.*, *Mendenhall*, 728 N.E.2d at 142; *Manns v. State Dept. of Highways*, 541 N.E.2d 929, 934 (Ind. 1989) (noting that a plaintiff is likely to suffer unfair prejudice when a jury is unnecessarily informed of a prior partial settlement). It would be the height of prejudice for EVSC to have it both ways, seeking to have the jury allocate a portion of fault to the non-party UE Defendants and then to have the Court further reduce EVSC's portion as a result of the settlement with UE. This is not permissible under the law.

### VI. Tort Claims Act Cap Applies to Each Incident, Separately, for Each Plaintiff

EVSC's liability for damages is statutorily capped by the ITCA. The statute provides, in relevant part, as follows:

> (a) The combined aggregate liability of all governmental entities and of all public employees, acting within the scope of their employment and not excluded from liability under section 3 of this chapter, does not exceed:
>
> (1) for injury to or death of one (1) person in any one (1) occurrence:
>
> * * *
>
> (C) seven hundred thousand dollars ($700,000) for a cause of action that accrues on or after January 1, 2008; and
>
> (2) for injury to or death of all persons in that occurrence, five million dollars ($5,000,000).

I.C. 34-13-3-4.

As the first part of this section makes clear, the statutory cap is applied, separately, per person and per occurrence. *Elkhart Community Schs. v. Yoder* [hereinafter *Yoder*], 696 N.E.2d 409, 415-16 (Ind. Ct. App. 1998). In this case, there are multiple Plaintiffs and multiple incidents, or occurrences, at issue. Each of the Minor Plaintiffs is entitled to a separate recovery cap for each instance of negligence on the part of EVSC which is established at trial. I.C. 34-13-3-4; *Yoder*, 696 N.E.2d at 415-16.

Furthermore, each of the Plaintiff Parents in this case has a direct liability claim against EVSC to recover damages for the negligent infliction of emotional distress under *K.G. by Next Friend Ruch v. Smith*, 178 N.E.3d 300 (Ind. 2021). In addition, the Plaintiff Parents each have their own, additional claims for relief which derive from the personal injury claims suffered by their respective minor children. Indiana law has long held that "[a] wrongful act resulting in an injury to a minor child gives rise to two causes of action, one in favor of the injured child for personal injuries inflicted [upon the child] and the other in favor of the parent for loss of services." *Buffalo v. Buffalo*, 441 N.E.2d 711, 714 (Ind. Ct. App. 1982); *see also State v. Eaton*, 659 N.E.2d 232, 237 (Ind. Ct. App. 1995), *reh'g denied* (1996). In addition to the claim for loss of services, the parent of an injured child may also recover damages for the parent's loss of the love and companionship of the child. *E.g.*, *Yoder*, 696 N.E.2d at 416; *Myers v. County of Lake, Indiana*, 30 F.3d 847, 853 (7th Cir. 1994) (applying Indiana law).

Each of these cases makes abundantly clear that the separate claims of the Plaintiffs Parents, whether belonging directly to them or deriving from the injuries suffered by their respective children, gives rise to a separate cap, or series of caps when multiple occurrences are involved. *E.g.*, *Myers*, 30 F.3d at 853; *Yoder*, 696 N.E.2d at 416; *Eaton*, 659 N.E.2d at 237. EVSC thus cannot be heard to argue that a single cap in the amount of seven hundred thousand

12

dollars ($700,000) applies, globally, to all of the Plaintiffs' claims in this case. Moreover, if the jury finds there to be more than one occurrence, the damages will not be capped even at the five million dollar ($5,000,000) level.

## CONCLUSION

WHEREFORE, the Plaintiffs, Ashlee E. Padgett, Casey A. Boyer and Kristy A. Martin, Sean R. Giolitto and Christopher S. Pentecost, and Haley Kanizar, individually, and as the parents, next friends, and natural guardians of their respective minor children, B.L.H., S.A.B., N.C.G., and D.M.F., and the said minor children, by their respective next friends, by counsel, respectfully pray for the Court to exclude the introduction into evidence of both the fact and the amount of any settlement between any of the Plaintiffs and the UE Defendants, to instruct the jury on the apportionment of damages among the parties to the action and any duly named non-parties, pursuant to I.C. 34-51-2-8, to enforce the jury verdict as so apportioned against the EVSC Defendants subject to separate per person and per occurrence statutory caps under the ITCA, and for all other relief just and proper in the premises.

Respectfully submitted,

*s/ Lane C. Siesky*
Lane C. Siesky, Atty. No. 21094-53
Daniel B. Gearhart, Atty No. 24194-49
Robert T. Garwood, Atty. No. 32223-49
Douglas K. Briody, *Of Counsel*,
   Atty. No. 17883-82
SIESKY LAW FIRM, PC
4424 Vogel Rd., Suite 405
Evansville, Indiana 47715
Telephone: (812) 402-7700
Fax: (812) 402-7744
lane@sieskylaw.com
dan@sieskylaw.com
robert@sieskylaw.com
doug@sieskylaw.com
ATTORNEYS FOR PLAINTIFFS

CERTIFICATE OF SERVICE

     I hereby certify that on April 1, 2025, a copy of the foregoing *Plaintiffs' Trial Brief* was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| Mark K. Phillips<br>*mphillips@phillipslawpc.com* | Patrick A. Shoulders<br>*pshoulders@zsws.com* |
| Robert L. Burkart<br>*rburkart@zsws.com* | |

*s/ Lane C. Siesky*
Lane C. Siesky
SIESKY LAW FIRM, PC
4424 Vogel Rd., Suite 405
Evansville, Indiana 47715
Telephone: (812) 402-7700
Fax: (812) 402-7744
lane@sieskylaw.com
ATTORNEYS FOR PLAINTIFFS