UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| ASHLEE E. PADGETT,<br>CASEY A. BOYER,<br>KRISTY A. MARTIN,<br>SEAN R. GIOLITTO,<br>CHRISTOPHER S. PENTECOST,<br>HALEY KANIZAR,<br><br>          Plaintiffs,<br><br>          v.<br><br>JACOB CARL BUTLER,<br>EVANSVILLE-VANDERBURGH SCHOOL CORPORATION,<br>BOARD OF SCHOOL TRUSTEES OF THE EVANSVILLE-VANDERBURGH SCHOOL CORPORATION,<br>BRETT L. HAWKINS Clerk's Entry of Default Entered on 12/14/2023,<br>DAY-DRIAN M. FRANKLIN Clerk's Entry of Default Entered on 12/14/2023,<br><br>          Defendants.<br><br>THE VANDERBURGH COUNTY CYBER CRIMES TASK FORCE,<br>THE VANDERBURGH COUNTY PROSECUTOR'S OFFICE,<br><br>          Miscellaneous. | No. 3:23-cv-00071-MPB-CSW |

**<u>ORDER DENYING EVSC DEFENDANTS' MOTION FOR RECONSIDERATION</u>**

Plaintiffs are the parents of children who attended an elementary school within the Evansville-Vanderburgh School Corporation and were victims of Defendant Jacob Butler ("Butler"), a convicted sex offender. Butler was a university student that provided tutoring services in the afterschool program at the elementary school. Plaintiffs sue Butler alongside the

Evansville-Vanderburgh School Corporation and its Board of Trustees (collectively, "EVSC Defendants") for alleged failures that they argue led to the exploitation of Plaintiffs' children. EVSC Defendants moved for summary judgment on all claims asserted against them. (Docket No. 171). This Court granted summary judgment in favor of EVSC Defendants as to all of Plaintiffs' vicarious liability and Title IX claims but denied summary judgment as to all of Plaintiffs' direct liability claims. (Docket No. 256 at ECF p. 24). Now before the Court is EVSC Defendants' Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 54(b). (Docket No. 257). For the reasons stated below, that Motion (Docket No. 257) is **DENIED**.

I.     Background

The following is an abbreviated version of the facts. Defendant Butler was an education major at the University of Evansville ("UE") who desired to be a middle school teacher. (Docket No. 172 at ECF p. 9). He participated in UE's Tutoring Program, which offered tutoring services at different schools, including EVSC's Vogel Elementary School ("Vogel "). (*Id.* at ECF p. 11). Butler expressed interest in the tutoring program and was placed at Vogel. (Docket No. 180 at ECF p. 39).

Defendant Butler came to Vogel to tutor for one hour after school, twice per week. (Docket No. 182 at ECF p. 2). During the after-school hours, Vogel runs a daycare program, (Docket No. 185 at ECF p. 13), which is subject to mandatory staffing ratios, (Docket No. 228-2 at ECF pp. 5–6). During the fall of 2021, the Vogel daycare was understaffed on multiple occasions. (*See id.* at ECF pp. 1–3). Ms. Pamela Wilson served as the daycare coordinator and was "in charge" of the daycare program. (Docket No. 186 at ECF p. 21). Ms. Wilson identified that she reported to Principal Lindauer. (Docket No. 185 at ECF p. 21).

When Butler arrived at Vogel, he signed in and wore a UE nametag. (Docket No. 172 at ECF p. 15). He would proceed to the daycare program located in the school cafeteria. (*Id.* at ECF p. 19; Docket No. 186 at ECF p. 37). Ms. Wilson or other daycare workers would tell Butler that a particular student or students "needed certain help" with homework assignments. (Docket No. 172 at ECF p. 13). Butler would then tutor these students in a classroom down the hall from the cafeteria. (*Id.* at ECF p. 18–19). When in this classroom, Butler was not under constant supervision by EVSC employees, (*id.* at ECF p. 19), and Ms. Wilson was unable to see into the classroom from her position in the cafeteria, (Docket No. 228-1 at ECF p. 7). Indeed, "[d]ue to [the daycare] group [being] short-staff[ed]" Ms. Wilson did not check in on the tutoring room, nor did she ask other daycare workers to observe the tutors. (*Id.* at ECF p. 10).

Across from the cafeteria and next to the tutoring room, there is a children's restroom. (Docket No. 186 at ECF p. 131). When Butler tutored at Vogel, he would escort the children to the restroom and "supervise" them. (Docket No. 172 at ECF p. 22). Butler also used the restroom for personal reasons and spent an average of twenty minutes in the children's restroom on days that he tutored. (*Id.* at ECF p. 31). While in the restroom, Butler would "take pictures and videos of the children . . . while they used the restroom." (*Id.* at ECF p. 32). Butler acknowledged that he did this "pretty much every time" he tutored at Vogel, starting in late October or early November 2021. (*Id.* at ECF p. 34).

Parents of a student not associated with this case met with Principal Lindauer and reported that their child saw a person using their phone while in the children's restroom. (Docket No. 186 at ECF p. 55). After talking with the child and with staff members in the daycare program, Principal Lindauer contacted Officer Alford, an EVSC police officer, and recounted her concerns about Defendant Butler. (*Id.* at ECF p. 57). During a subsequent conversation with

Officer Alford and a member of UE Public Safety, Butler admitted to taking photos of the children. (Docket No. 191). He also admitted to inappropriately touching a juvenile's "genital area," on two separate occasions. (Docket No. 190 at ECF pp. 16–17). Butler was subsequently arrested and taken to the Vanderburgh County Jail. (Docket No. 191 at ECF p. 2).

This case was removed to federal court on April 27, 2023. (Docket No. 1). EVSC Defendants moved for summary judgment on June 21, 2024, (Docket No. 171), which was granted in part and denied in part, (Docket No. 256). Five days after the Courts' ruling, EVSC Defendants moved for reconsideration. (Docket No. 257).

## II. Legal Standard

Federal Rule of Civil Procedure 54(b) allows revision of non-final orders. *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012). Such a motion is governed by similar standards as a motion to alter or amend a judgment under Rule 59(e). *Woods v. Resnick*, 725 F.Supp.2d 809, 827 (W.D. Wis. 2010) ("[M]otions to reconsider an order under Rule 54(b) are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e)."). A Rule 54(b) motion to reconsider "serve[s] a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Res. Inc. v. Walker–Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (quotations omitted). It is properly considered "where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (cleaned up). It cannot be used "for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citations omitted).

### III. Discussion

EVSC Defendants ask the Court to reconsider its denial of their Motion for Summary Judgment as to Plaintiffs' direct liability claims. Specifically, the Court found that EVSC Defendants "did not challenge [Plaintiffs'] direct liability claims in their opening summary judgment brief" and that their arguments as to the direct liability claims "are waived." (Docket No. 256 at ECF pp. 23–24). EVSC Defendants' basis for their Motion for Reconsideration is the "Court's . . . misunderstanding of [EVSC Defendants'] immunity argument seeking summary judgment as to all remaining tort claims" under the Indiana Tort Claims Act ("ITCA"). (Docket No. 257 at ECF pp. 1–2).

In its summary judgment Order, the Court noted that EVSC Defendants "moved for summary judgment on all remaining claims." (Docket No. 256 at ECF p. 7) (internal docket citation omitted). It acknowledged that one of EVSC Defendants' arguments was that "Butler was not an EVSC employee and that they are therefore immune from liability under the [ITCA]." (*Id.* at ECF p. 9). The ITCA, in pertinent part, states that "[a] governmental entity . . . is not liable if a loss results from . . . [t]he act or omission of anyone other than the governmental entity or the governmental entity's employee." Ind. Code § 34-13-3-3(a)(10). The applicability of that subsection turns on whether the person meets the definition of an employee, or if they are better characterized as an independent contractor. *Mortg. Consultants, Inc. v. Mahaney*, 655 N.E.2d 493, 495–96 (Ind. 1995). Instead of taking that route, the Court assumed without deciding that Defendant Butler was an employee of EVSC Defendants for purposes of the respondeat superior analysis. (Docket No. 256 at ECF p. 9). The Court then resolved Plaintiffs' vicarious liability tort claims on the issue of scope of employment, (*id.* at ECF pp. 10–15), but found that EVSC Defendants waived any argument as to Plaintiffs' direct liability tort claims, (*id.* at ECF pp. 22–

5

24). One reason undergirded the Court's decision: it was unclear that EVSC Defendants sought immunity as to Plaintiff's direct liability claims.

EVSC Defendants' brief contained no reference to Plaintiffs' direct liability claims. Instead, the brief framed Plaintiffs' state law tort claims as attempting to hold EVSC Defendants "vicariously liable" for Defendant Butler's actions. (Docket No. 220 at ECF p. 22). EVSC Defendants then advanced multiple arguments, including that they were entitled to "immunity as to Plaintiffs' tort claims" because Defendant Butler was not an employee under the ITCA. (*Id.* at ECF p. 25). But it was unclear if this argument applied to *all* of Plaintiffs' tort claims, or just the claims seeking to impose *vicarious* liability on EVSC Defendants for Butler's actions, as framed in their opening paragraph. It was not until their reply brief that EVSC Defendants clearly stated that they sought summary judgment on all of Plaintiffs' state law tort claims based on "statutory immunity[.]" (Docket No. 238 at ECF p. 2). The Court applied waiver to EVSC Defendants' immunity argument as to Plaintiffs' direct liability claims because it was undeveloped on the front end and improperly raised on reply on the back end. (*See* Docket No. 256 at ECF pp. 23–24).

To the extent that EVSC Defendants assert that the Court did not understand their immunity argument, the Court is skeptical that the argument was ever raised in the first place. Misunderstanding an argument presupposes that the argument was legitimately raised—a condition not readily ascertainable based on the briefing, especially "when the brief presents a passel of other arguments," as EVSC Defendants did in this case with respect to vicarious liability. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). For example, EVSC Defendants' brief contains *thirteen* references to vicarious liability as opposed to *zero* references to Plaintiffs' direct liability claims. (*See generally* Docket No. 220). Even if their argument

6

seeking total immunity existed in the opening brief, it was undeveloped, and EVSC Defendants spent only two sentences developing it in their reply brief. (*See* Docket No. 238 at ECF p. 2). "Judges are not like pigs, hunting for truffles buried in briefs." *Dunkel*, 927 F.2d at 956. The Court properly found that EVSC Defendants waived their ITCA immunity argument as to Plaintiffs' direct liability claims. *See, e.g., Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 876 (7th Cir. 2008) (undeveloped argument constitutes waiver); *O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020) ("[W]e have repeatedly recognized that district courts are entitled to treat an argument raised for the first time in a reply brief as waived."). EVSC Defendants have not convinced the Court that it committed a "manifest error" of law in finding waiver. *Publishers Res. Inc.,* 762 F.2d at 561.

Further, even if EVSC Defendants' immunity argument was raised and adequately developed, it relies on a misstatement of law. Indeed, as caselaw illustrates, the most that ITCA immunity could provide EVSC Defendants is immunity for Plaintiffs' vicarious liability claims. That is because the ITCA *does not apply* to direct liability claims, despite EVSC Defendants' argument to the contrary.

As EVSC Defendants point out, the ITCA requires "courts [to] look to the conduct forming the foundation of the claim, rather than relying on the legal theory upon which the claim is based." *Wynn v. City of Indianapolis*, 496 F.Supp.3d 1224, 1235 (S.D. Ind. 2020) (citation omitted). The question is this: What conduct is at the center of the direct liability tort claims? The Court found that EVSC Defendants waived argument as to Plaintiffs' claims for the negligent hiring and training of Defendant Butler, the negligent hiring of Ms. Wilson, the negligent training of Ms. Wilson and other after-school staff regarding the supervision of tutors, and the negligent supervision of the students themselves, including Plaintiffs' children. The conduct at issue in

7

each of these claims is EVSC Defendants' *own* acts or omissions. Plaintiffs allege that EVSC Defendants (and their employees) negligently hired and trained Butler, negligently hired Ms. Wilson, failed to adequately train their staff about supervising tutors, and negligently supervised the children. Indiana courts, in cases where governmental entities have argued for immunity in similar situations, have all declined to extend immunity.

The Indiana Supreme Court gave a detailed account of ITCA immunity in *Hinshaw v. Board of Commissioners of Jay County*, 611 N.E.2d 637 (Ind. 1993). There, the court focused on "the meaning to be given Subsection [10][1] of the immunity provision in the Indiana Tort Claims Act which applies 'if a loss results from . . . the act or omission of someone other than the governmental entity employee.'" *Id.* at 638 (quoting Ind. Code § 34-4-16.5-3(9)). The court declared that immunity under this subsection applies "in such actions seeking to impose *vicarious* liability by reason of conduct of third parties" because the "alleged basis of governmental entity liability is the act or omission of a third person not within the scope of employment[.]" *Id.* at 640–41 (emphases added). In *Hinshaw*, plaintiffs brought a claim of "negligent signing and maintenance" of an intersection against the county following a car crash. *Id.* at 638. The county argued that it was entitled to immunity under the ITCA "on grounds that the conduct of persons other than a government employee contributed to the plaintiffs' injuries." *Id.* at 641. But the court held that, despite the fact the plaintiffs' injuries arose from a car crash with a person who was not a governmental employee, the county was not entitled to an immunity defense because plaintiffs' claim against the county involved the county's own conduct in signing

---

[1] *Hinshaw* was decided under the previous version of the ITCA, where the language at issue could be found at subsection nine. But the Indiana Legislature did not amend the language of this subsection when it added additional immunity subsections in a later version of the statute. *Bartholomew Cnty. v. Johnson*, 995 N.E.2d 666, 672 n. 3 (Ind. Ct. App. 2013).

and maintaining the road. The county's argument was better suited for challenging the "proximate causes of the accident[.]" *Id.*

Subsequent courts have relied on *Hinshaw* for the proposition that the ITCA "entitles a governmental entity to immunity from liability for a loss resulting from the acts or omissions of an independent contractor[.]" *Bartholomew Cnty. v. Johnson*, 995 N.E.2d 666, 678 (Ind. Ct. App. 2013) (citation omitted). But immunity does not apply "if a loss results from its own negligence, that is, if a loss results from an act for which it can be held directly liable." *Id.* at 679 (citation and quotations omitted). Thus, the *Johnson* court reversed and remanded for further consideration a claim centered on the county's alleged negligent maintenance and operation of a bridge. *Id.* And in a more analogous case, where plaintiffs alleged that a school corporation "was negligent for failing to properly train and supervise" a bus driver, the court noted that ITCA immunity was not applicable because "[t]his argument concerns the [s]chool's alleged direct negligence." *Jacks by Jacks v. Tipton Cmty. Sch. Corp.*, 94 N.E.3d 712, 720 (Ind. Ct. App. 2018). The court addressed plaintiff's direct negligence claims *after* finding that the bus driver was an independent contractor. *Id.* at 719. But plaintiff's claim that the school corporation itself negligently trained and supervised the bus driver focused on the school's conduct, and hence the traditional negligence analysis governed. *Id.* at 720.

EVSC Defendants make the same argument as the county in *Hinshaw*. There, the county claimed immunity "on grounds that the conduct of persons other than a government employee contributed to the plaintiffs' injuries." 611 N.E.2d at 641. Here, EVSC Defendants state that "because Defendant Butler was not an EVSC employee" it is entitled to "full ITCA immunity for all remaining tort claims." (Docket No. 257 at ECF p. 4). But that argument disregards Plaintiffs' claims that EVSC Defendants themselves were negligent, such as in the hiring of daycare

9

supervisor Ms. Wilson, or in the training of daycare workers, or in supervising the children. The upshot—as cases like *Hinshaw*, *Johnson*, and *Jacks by Jacks* make clear—is that the ITCA does not provide immunity "if a loss results from [EVSC Defendants'] own negligence, that is, if a loss results from an act for which it can be held directly liable." *Johnson*, 995 N.E.2d at 679. Thus, there is no legal basis for EVSC Defendants to assert immunity for Plaintiffs' direct liability claims.

Of course, EVSC Defendants could have made arguments "on the basis of failure of any element of negligence." *Johnson*, 995 N.E.2d at 672 (citation omitted). The argument that Defendant Butler's actions were the cause of the children's injuries is likely germane to the issue of proximate cause, *see Hinshaw*, 611 N.E.2d at 641, and a jury may find that argument persuasive. But that argument was not before the Court in the summary judgment briefing.

In sum, there is no basis under Rule 54(b) to grant EVSC Defendants' Motion for Reconsideration. EVSC Defendants' total immunity argument was not clearly established in their initial summary judgment brief. To the extent that the total immunity argument was raised, it was waived on the front end as undeveloped, *Roe-Midgett*, 512 F.3d at 876, and on the back end as improperly raised on reply, *O'Neal*, 961 F.3d at 974. And even if EVSC Defendants' assertion that the ITCA grants them total immunity to all of Plaintiffs' tort claims was properly preserved, their characterization of the law is misleading. The ITCA provides no shield for Plaintiffs' direct liability claims because they rely on conduct taken by the school and its employees. *See Wynn*, 496 F.Supp.3d at 1235 (citation omitted). Immunity does not apply, and the focus shifts to a traditional negligence analysis. *Jacks by Jacks*, 94 N.E.3d at 720. But those arguments were not before the Court at the summary judgment stage, and they cannot be before it now. *See Caisse Nationale de Credit Agricole*, 90 F.3d at 1270. The Court did not make a manifest error of law

when it found that EVSC Defendants' waived argument as to Plaintiffs' direct liability claims, nor are there new facts available, nor was there a misunderstanding of EVSC Defendants' argument to justify Rule 54(b) relief. *Publishers Res. Inc.*, 762 F.2d at 561; *Bank of Waunakee*, 906 F.2d at 1191.

### IV. Conclusion

For the reasons stated above, EVSC Defendants' Motion for Reconsideration (Docket No. 257) is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 2, 2025

_____
Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

Served electronically on all ECF-registered counsel of record.